UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SMARTWATER, LTD.,

                    Plaintiff,

                                          <u>MEMORANDUM & ORDER</u>
          -against-                       12-CV-5731(JS)(AKT)

APPLIED DNA SCIENCES, INC.,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Jeffrey E. Francis, Esq.
                    Joseph Maraia, Esq.
                    Margaret M. O'Keefe, Esq.
                    Pierce Atwood LLP
                    100 Summer Street, Suite 2250
                    Boston, MA 02110

                    Suzanna Marie Meyers Morales, Esq.
                    William R. Hansen, Esq.
                    Lathrop & Gage LLP
                    230 Park Avenue, Suite 2400
                    New York, NY 10169

                    David S. Brafman, Esq.
                    Akerman Senterfitt
                    222 Lakeview Ave., Suite 400
                    West Palm Beach, FL 33401

For Defendant:      Joseph P. Zammit, Esq.
                    James R. Crawford, Esq.
                    Felice B. Galant, Esq.
                    Jami Elizabeth Mills Vibbert, Esq.
                    Fullbright & Jaworski LLP
                    666 Fifth Avenue
                    New York, NY 10103

SEYBERT, District Judge:

          Currently pending before the Court are: (1) Defendant

Applied DNA Sciences, Inc.'s ("Defendant" or "ADNAS") partial

motion to dismiss (Docket Entry 12) and (2) Plaintiff

Smartwater, Ltd.'s ("Plaintiff" or "Smartwater") motion to amend the Complaint (Docket Entry 57). For the following reasons, Defendant's motion is DENIED AS MOOT and Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I. Factual Background

Plaintiff is a foreign corporation that owns two relevant United States Patents: Patent 5,605,650 (the "'650 Patent") and Patent 5,811,152 (the "'152 Patent"). (Compl. ¶¶ 1-2.) The original Complaint contains few factual allegations, the entirety of which are as follows:

> 7. [Defendant] makes, uses, sells or offers for sale products including, but not limited to: (i) SmartDNA Intruder Tagging Systems; (ii) Signature DNA, and (iii) DNANet products that infringe one or more claims of the '650 [Patent].

> 8. [Defendant] has also infringed one or more claims of the '650 Patent by knowingly and actively inducing others to infringe, by contributing to the infringement of others and by intentionally aiding, assisting and encouraging the infringement of others through the sale, offer for sale, manufacture and use of [Defendant's] products including, but not limited to: (i) SmartDNA Intruder Tagging Systems; (ii) Signature DNA, and (iii) DNANet products.

> . . .

> 11. [Defendant] makes, uses, sells or offers for sale products including, but not limited to: (i) SmartDNA Intruder Tagging Systems; (ii) Signature DNA, and (iii)

2

DNANet products that infringed one or more claims of the '152 Patent.

12. [Defendant] has also infringed one or more claims of the '152 Patent by knowingly and actively inducing others to infringe, by contributing to the infringement of others and by intentionally aiding, assisting and encouraging the infringement of others through the sale, offer for sale, manufacture and use of [Defendant's] products including, but not limited to: (i) SmartDNA Intruder Tagging Systems; (ii) Signature DNA, and (iii) DNANet products.

(Compl. ¶¶ 7-8, 11-12.)

Plaintiff asserts two claims in the original Complaint--one for infringement of the '650 Patent and one for infringement of the '152 Patent.

Plaintiff's Proposed Amended Complaint ("PAC") contains the same two causes of action, but alleges additional factual allegations. Specifically, Plaintiff alleges that it "provides a forensic marking technology - a water-based, clear solution that dries invisibly but is later detectable under UV light - that marks goods and persons coming in contact with the solution." (PAC ¶ 7.) Defendant, Plaintiff alleges "makes, uses, sells or offers for sale products including, but not limited to colorless, odorless SigNature® DNA, Cashield™, Smart DNA and DNAnet™ products (the 'Marking Products')." (PAC ¶ 8.)

The PAC further alleges that Defendant directly infringed claim one of the '650 Patent and claim ten of the '152

Patent, as well as the other claims in the patents-in-suit, by carrying out testing and demonstrations of the Marking Products in the United States, as exemplified by videos posted on "longislandreport.org"[1] ("Video 1") and youTube[2] ("Video 2"). (PAC ¶¶ 8, 16.)  Video 1 depicts a demonstration in which a "fake criminal" attempts to leave a pharmacy with a stolen item. As he leaves, he is sprayed by the smartDNA system, which appears to be a clear mist.  The video then shows how the mist would glow under a particular light, thus marking the suspect. Video 2 incorporates Video 1 and includes a slideshow presentation regarding Defendant's products.

In addition, Plaintiff alleges that Defendant indirectly infringed the patents-in-suit.  According to the PAC, Defendant had knowledge of the patents-in-suit because in March 2008, Defendant tasked an employee to investigate Plaintiff's patents and to ask its patent attorney to initiate a search. (PAC ¶¶ 9-10, 17-18.)  Moreover, Plaintiff alleges that Defendant had knowledge of Plaintiff's allegations that it was infringing the patents-in-suit since "at least June 2012." (PAC ¶¶ 11, 19.)  Furthermore, Plaintiff asserts that Defendant

---

[1] See http://longislandreport.org/multimedia/video-dna-spray-security-system-could-help-protect-pharmacies/13050 (last visited Sept. 17, 2013).

[2] See http://www.youtube.com/watch?v=RDiuxDBZWlg&feature=channel&list=UL (last visited Sept. 17, 2013).

indirectly infringed the '650 Patent and the '152 Patent by inducing others to infringe the patents by providing instructions, directions, and promotional materials regarding the Marking Products on certain websites. (PAC ¶¶ 12, 20.) Finally, the PAC alleges that Defendant contributed to the infringement of the '650 Patent and the '152 Patent by selling the Marking Products to consumers. (PAC ¶¶ 14, 21.)

## II. Procedural Background

According to Defendant, Plaintiff initially filed a "virtually . . . identical complaint" in the District of Massachusetts on June 6, 2012, but later voluntarily withdrew the suit. (See Def.'s Br. in Support of Mot. to Dismiss ("Def.'s Br. to Dismiss"), Docket Entry 12, at 1.)

Thereafter, Plaintiff filed the instant Complaint in the Middle District of Florida on August 24, 2012. Defendant moved to transfer venue, which the Florida court granted, and the case was transferred to this Court in November 2012. (See Docket Entries 29-30.) Prior to transfer, however, Defendant moved to dismiss, and that motion is now pending before this Court. Approximately seven months after transfer, Plaintiff cross-moved to amend the Complaint.

## DISCUSSION

Defendant's motion to dismiss, although primarily mooted by Plaintiff's motion to amend, provides a general

framework for understanding the parties' arguments and positions. Accordingly, the Court will focus its attention on Plaintiff's motion to amend, discussing Defendant's motion to dismiss where appropriate. First, however, the Court will address the applicable legal standards of review.

I.   Standards of Review

     A.   General Standards

          Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

          In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.   Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.   Iqbal, 556 U.S. at 679.   Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint."   Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).   This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.   See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B.   Form 18 and Claims of Patent Infringement

The aforementioned standard, however, is somewhat more liberal for claims of direct infringement, as the Federal Circuit has confirmed that, as per Rule 84 of the Federal Rules, claims for direct patent infringement are governed by Form 18 of

7

the Appendix to the Federal Rules. <u>See</u> <u>In re Bill of Lading</u>
<u>Transmission & Processing Sys. Patent Litig.</u>, 681 F.3d 1323,
1336-37 (Fed. Cir. 2012).

> Form 18,
>
> requires only: (1) an allegation of
> jurisdiction; (2) a statement that the
> plaintiff owns the patent; (3) a statement
> that the defendant has been infringing the
> patent by making, selling, and using the
> device embodying the patent; (4) a statement
> that the plaintiff has given the defendant
> notice of its infringement; and (5) a demand
> for an injunction and damages.

<u>Gradient Enters., Inc. v. Skype Techs. S.A.</u>, 848 F. Supp. 2d
404, 407 (W.D.N.Y. 2012); <u>see also</u> <u>Bill of Lading</u>, 681 F.3d at
1334. Thus, a complaint that conforms to Form 18 simply states
the bare elements of a claim and does not comport with the
standard articulated by the Supreme Court in <u>Twombly</u> and <u>Iqbal</u>.
However, Rule 84 of the Federal Rules of Civil Procedure states
that "[t]he forms in the Appendix suffice under these rules and
illustrate the simplicity and brevity that these rules
contemplate." FED. R. CIV. P. 84.

"Not surprisingly, then, the combination of <u>Twombly</u>,
<u>Iqbal</u>, . . . Form 18, and Rule 84, has led to differing
conclusions among the lower courts about whether a complaint
that complies with the minimum requirements of Form 18 suffices
to state a claim for direct patent infringement." <u>Gradient</u>, 848
F. Supp. 2d at 407. Nevertheless, the weight of authority

suggests and the Federal Circuit has informed us that "whether [a complaint] adequately plead[s] direct infringement is to be measured by the specificity required by Form 18." Bill of Lading, 681 F.3d at 1334; see, e.g., Loftex USA LLC v. Trident Ltd., No. 11-CV-9349, 2012 WL 5877427, at *3 (S.D.N.Y. Nov. 20, 2012) (stating that "Official Form 18 in the Appendix of Forms to the Federal Rules of Civil Procedure . . . governs the pleading standards for a claim of direct patent infringement"); Automated Transactions, L.L.C. v. First Niagara Fin. Grp., Inc., No. 10-CV-0407, 2010 WL 5819060, at *5 (W.D.N.Y. Aug. 31, 2010) ("[U]nless or until Rule 84 is amended, I conclude that the sufficiency of [the plaintiffs]'s direct infringement allegations is governed by Appendix Form 18, not by the requirements of Twombly and Iqbal."), adopted by 2011 WL 601559 (W.D.N.Y. Feb. 11, 2011); see also, e.g., CreAgri, Inc. v. Pinnaclife, Inc., No. 11-CV-6635, 2013 WL 11569, at *2 (N.D. Cal. Jan. 1, 2013); Execware, L.L.C. v. Staples, Inc., No. 11-CV-0836, 2012 WL 6138340, at *2 (D. Del. Dec. 10, 2012), adopted by 2013 WL 171906 (D. Del. Jan. 16, 2013); Select Retrieval, LLC v. Bulbs.com Inc., No. 12-CV-10389, 2012 WL 6045942, at *3 (D. Mass. Dec. 4, 2012); Select Retrieval, LLC v. L. L. Bean, Inc., No. 12-CV-0003, 2012 WL 5381503, at *2 (D. Me. Oct. 31, 2012); PB & J Software, L.L.C. v. Backup Agent B.V., No. 12-CV-0691, 2012 WL 4893678, at *2 (E.D. Mo. Oct. 15, 2012). Further, the

Federal Circuit looked to Form 18 in analyzing whether a complaint adequately pled direct infringement, stating that to the extent that "Twombly and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control." Bill of Lading, 681 F.3d at 1334.

However, the courts that have applied Form 18 over Iqbal/Twombly have made it clear that "Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement." Id. at 1336; see also Pecorino v. Vutec Corp., --- F. Supp. 2d ----, 2012 WL 5989918, at *21 (E.D.N.Y. Nov. 30, 2012); Gradient, 848 F. Supp. 2d at 408. Thus, to the extent that the PAC pleads claims of direct infringement the Court will apply Form 18, and to the extent that it pleads claims of indirect infringement the Court will apply the Iqbal/Twombly plausibility standard.

## II. Direct Infringement

As defined by statute, direct infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Particularly with respect to claims of infringement of method patents, "[t]o establish liability for direct infringement of a

10

claimed method or process under 35 U.S.C. § 271(a), a patentee must prove that each and every step of the method or process was performed." Travel Sentry, Inc. v. Tropp, 497 F. App'x 958, 965 (Fed. Cir. 2012); see also Ill. Comp. Research LLC v. Harper Collins Publishers, Inc., No. 10-CV-9124, 2011 WL 3279065, at *2 (S.D.N.Y. July 28, 2011) ("In order to establish direct infringement of method claims, a patent owner must show that the accused infringer performs every step of the claimed method.").

A. The '650 Patent

Defendant maintains that Plaintiff's PAC has failed to allege direct infringement of the '650 Patent because, in part, "Video 1 portrays what the accompanying text describes as 'a security system that spritzes plant DNA onto a fleeing criminal.'" (Def.'s Opp. Br. to Pl.'s Mot. to Amend ("Def.'s Opp. Br."), Docket Entry 59, at 12[3] (quoting Video 1, available at http://longislandreport.org/multimedia/video-dna-spray-security-system-could-help-protect-pharmacies/13050).) According to Defendant, "[t]his is completely different from claim 1 of the '650 Patent, which describes a method entailing applying a composition as a film to the surface of an object, and directly transferring the composition from the object to a person

_____

[3] The Court notes that the parties have filed their briefs in connection with Plaintiff's motion to amend under seal. However, those portions of the briefs to which the Court cites in the instant Memorandum and Order do not appear to be restricted under the governing Confidentiality Order.

tampering with it." (Def.'s Opp. Br. at 12 (citing PAC, Ex. 1,

Claim 1.) Claim one of the '650 Patent states,

> A method for detecting tampering, comprising
> applying to at least a portion of a surface
> of an object a composition comprising at
> least one fluorescent material and a solvent
> medium therefor, said solvent medium
> containing a volatile solvent and said
> composition being colorless, odorless and
> having no feel thereto upon application as a
> film to the surface of said object, and
> being capable of transfer from the surface
> of said object to another surface, and
> directly transferring said composition from
> said object to a person tampering therewith.

(Compl. Ex. 1, Claim 1.)

Plaintiff argues that, although Defendant has set

forth its interpretation of the claim, this is really an issue

of claim construction, and therefore Defendant's argument "is

not appropriate at the pleading stage." (Pl.'s Reply Br.,

Docket Entry 62, at 9.) The Court agrees.

"A determination that a claim term 'needs no

construction' or has the 'plain and ordinary meaning' may be

inadequate when a term has more than one 'ordinary' meaning or

when reliance on a term's 'ordinary' meaning does not resolve

the parties' dispute." O2 Micro Int'l Ltd. v. Beyond Innovation

Tech. Co., Ltd., 521 F.3d 1351, 1361 (Fed. Cir. 2008). Here,

Defendant seemingly relies upon the ordinary meaning of the

claim and, specifically, the phrase "directly transferring."

Plaintiff counters that Defendant's interpretation is "contrary

to the plain language of the claim." (Pl.'s Reply Br. at 9.)
Thus, the parties apparently maintain that there is more than
one ordinary meaning. "Because the parties dispute the meaning
of terms in the asserted claims," claim construction is
appropriate. Trading Tech. Int'l v. eSpeed, Inc., 595 F.3d
1340, 1350 (Fed. Cir. 2010). As this requires an inquiry beyond
the pleadings, see id. at 1351-52; see also Aristocrat Tech.
Australia Pty Ltd. v. Int'l Game Tech. & IGT, 709 F.3d 1348,
1354-55 (Fed. Cir. 2013) (noting that the court can consider
intrinsic and extrinsic evidence in construing a claim), it
cannot be determined at the motion to dismiss stage.

Additionally, Defendant maintains that its claim for
direct infringement of the '650 Patent fails because Video 1 is
"a mere staged video, utilizing actors and portraying a
fictional robbery . . . ." (Def.'s Opp. Br. at 11.) However,
"[i]n cases in which more than one entity performs the steps of
a claimed method or process, a party [can be] liable for direct
infringement . . . if that party exercises 'control or
direction' over the performance of each step of the claim,
including those that the party does not itself perform." Move,
Inc. v. Real Estate Alliance Ltd., 709 F.3d 1117, 1122 (Fed.
Cir. 2013). Although this determination is a fact-specific
inquiry, see Travel Sentry, Inc., 497 F. App'x at 965, here
Plaintiff alleges that Defendant's employee or a hired actor

13

performed the remaining steps at Defendant's direction and control, which is sufficient to state a claim.

Defendant takes this argument one step further asserting that an actor following a script is not "tampering" with the object. (Def.'s Opp. Br. at 11.) Again, however, this requires claim construction. Accordingly, Plaintiff's motion to amend in this regard is GRANTED.

B.  Direct Infringement of the '152 Patent

Defendant similarly argues that Plaintiff has failed to allege a claim of direct infringement of the '152 Patent. More specifically, Defendant argues that Video 2, upon which Plaintiff bases its direct infringement claim of the '152 Patent (PAC ¶ 16), post-dates the patent's expiration. (Def.'s Opp. Br. at 12.) The webpage indicates that the video was posted on March 29, 2012. (See Video 2, available at http://www.youtube.com/watch?v-RDiuxDBZWlg&feature=channel&list= UL.) The '152 Patent expired on or about October 2, 2011. (Def.'s Opp. Br. at 12 n.6.)

However, as Plaintiff correctly notes, "Video 2 is not merely comprised of footage from Video 1, but additionally includes footage demonstrating [Defendant's] system at Gold Coast Bank, which had the systems in place before Video 1 was created." (Pl.'s Reply Br. at 10.) Thus, it is at least plausible that "the content of Video 2 predated February 16,

2012 since [the] systems were already in place at all Gold Coast Banks on Long Island." [4] (Pl.'s Reply Br. at 10.)

The Court finds Defendant's remaining argument that Video 2 does not show, describe, or suggest "a number of required elements of claim 10 and its dependent claims, including the use of at least five separately identifiable trace materials, a database of unique combinations of such trace materials, a volatile solvent, or a composition that is odorless and without feel after the volatile solvent evaporates" (Def.'s Opp. Br. at 12-13) to be meritless. The video includes narrative generally describing the trace materials, what it looked like, and how a thief could be traced.[5]

Accordingly, Plaintiff's motion to amend in this regard is GRANTED.

_____

[4] The Court takes this opportunity to note Plaintiff's additional argument that it has other evidence to support its claim. (See Pl.'s Reply Br. at 10 ("This video, along with the other supporting evidence, is merely illustrative and not the only evidence upon which SmartWater bases its amended factual allegations.").) Insofar as Plaintiff seems to seek discovery, and flesh out its claims later, this is inappropriate. See Bridgewater v. Taylor, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010) ("As a general proposition, a litigant has to state a claim before he or she is entitled to discovery."); KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) ("[A]llowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6) . . . .").

[5] For the same general reasons, the Court rejects Defendant's similar argument regarding the '650 Patent and Video 1.

III. <u>Indirect Infringement</u>

In addition to claims of direct infringement, the original Complaint and PAC also allege indirect infringement, both by induced infringement and contributory infringement. The relevant statute provides:

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
>
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(b)-(c).

In its motion to dismiss and in opposition to Plaintiff's motion to amend, Defendant argues that Plaintiff's indirect infringement claims fail because: (1) Plaintiff has not adequately alleged knowledge of the patents-in-suit, an essential element of any indirect infringement claim; (2) Plaintiff has not adequately plead facts establishing affirmative acts of inducement with specific intent in order to maintain a claim for induced infringement; and (3) Plaintiff has failed to plead facts identifying a component with no

substantial noninfringing uses in order to maintain a claim for contributory infringement. The Court will address each argument in turn.

A. <u>Knowledge</u>

Unlike direct infringement, indirect infringement is not a strict liability statute and, thus, both induced infringement and contributory infringement require knowledge of the patents-in-suit. <u>See</u> <u>Akami Tech., Inc. v. Limelight Networks, Inc.</u>, 692 F.3d 1301, 1308 (Fed. Cir. 2012); <u>Pecorino</u>, 2012 WL 5989918, at *21-23.

In opposition to Defendant's motion to dismiss, Plaintiff had initially pointed to the complaint that it filed against Defendant in the District of Massachusetts on June 6, 2012. (Pl.'s Opp. Br. to Def.'s Mot. to Dismiss ("Pl.'s Opp. Br."), Docket Entry 20, at 11.) Through the Massachusetts complaint, Plaintiff argued, Defendant had obtained knowledge of the patents-in-suit and of Plaintiff's allegations that Defendant's conduct infringed upon the '650 Patent and the '152 Patent.

In the PAC, Plaintiff has taken a somewhat different approach, now alleging the following:

> 9/17: At least as early as March 2008, ADNAS
> tasked an employee to investigate
> SmartWater's patents and to ask ADNAS's
> patent attorney to initiate a search.

10/18: By July 2008, an ADNAS employee had reviewed SmartWater's patents and identified two patents for further review by ADNAS's Chief Executive Officer and others.

11/19: On information and belief, ADNAS has been aware of the '650 Patent since at least July 2008, and of SmartWater's allegation that it is infringing the '650 Patent [and the '152 Patent], since at least June 2012."

(PAC ¶¶ 9-11, 17-19.)   Plaintiff refers to particular documents which were filed under seal pursuant to a confidentiality order. Thus, to preserve the potential confidentiality of the documents, the Court will not summarize the particulars of the correspondences.   Nonetheless, Defendant maintains that these documents do not demonstrate that Defendant actually knew of the patents-in-suit.  (Def.'s Opp. Br. at 5-7.)   The Court agrees.

As Plaintiff's allegations in the PAC make clear, in March 2008, Defendant allegedly contemplated a search.  Four months later, an employee, whom Defendant maintains was not an attorney or patent agent (Def.'s Opp. Br. at 6), identified two patents.  These two patents were not the patents-in-suit.

From this, Plaintiff asks the Court to infer that Defendant was aware of the patents-in-suit or willfully blind to their existence.   "However, the Court 'will not draw argumentative inferences in the plaintiff's favor,' and the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"   Byun v. Amuro, No. 10-CV-5417, 2011

WL 10895122, at *3 (S.D.N.Y. Sept. 6, 2011) (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998)). Furthermore, even putting aside actual knowledge, willful blindness still requires "both that a person believed there was a high probability that a fact exists and then took active steps to avoid learning of that fact." On Site Entery Co., Inc. v. MTU Onsite Energy Corp., No. 10-CV-1671(JS)(WDW), 2013 WL 3990919, at *6 (E.D.N.Y. Aug. 2, 2013). Nothing in Plaintiff's purported allegations suggest that Defendant knew or had reason to know of the patents-in-suit. Accordingly, Plaintiff's motion to amend in this regard is DENIED.

This analysis, though, does not end the inquiry, as the PAC alleges, similar to the original Complaint, that Defendant was made aware of the patents-in-suit and of Plaintiff's claims of infringement as of June 2012, apparently referring to the Massachusetts complaint. (PAC ¶¶ 11, 19.) Although Defendant had initially argued that knowledge of a patent obtained only through a complaint was insufficient, (Def.'s Br. to Dismiss at 9-10), "in this Circuit at least, pre-filing knowledge of the patents is not essential to a claim of induced infringement," Automated Transactions, LLC, 2010 WL 5819060, at *6 (citing Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd., 479 F. Supp. 2d 388, 408

(S.D.N.Y. 2007); <u>SEB, S.A. v. Montgomery Ward & Co., Inc.</u>, 412
F. Supp. 2d 336, 344 (S.D.N.Y. 2006)).  In addition, and while
strategic filing and withdrawing of complaints is not suggested
practice, there is nothing inherently wrong in Plaintiff's
proposition in this particular case that Defendant learned of
the patents-in-suit through the Massachusetts complaint.  <u>See</u>
<u>Proxyconn Inc. v. Microsoft Corp.</u>, No. 11-CV-1681, 2012 WL
1835680, at *6 (C.D. Cal. May 16, 2012) ("In fact, nothing
prevents a plaintiff from filing a new lawsuit alleging that the
knowledge requirement is established because the Defendant is
aware of the previous lawsuit.").

Accordingly, Plaintiff's motion to amend is DENIED
insofar as it alleges knowledge of the patent-in-suit based on
the aforementioned sealed correspondences, but it is GRANTED
insofar as it alleges knowledge based on the Massachusetts
complaint.

B.  <u>Induced Infringement</u>

Plaintiff further moves to amend its Complaint to
allege claims of induced infringement of both the '650 Patent
and the '152 Patent.  In support, Plaintiff includes factual
allegations not previously included in the original Complaint.
Defendant maintains that Plaintiff's amendment in this regard is
futile because Plaintiff has still failed to allege the
essential elements of an induced infringement claim.  The Court

20

agrees with respect to the '650 Patent but disagrees with respect to the '152 Patent.

"To state a claim for induced infringement pursuant to 35 U.S.C. § 271(b), the patentee must plead facts showing, first, that 'there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" Pecorino, 2012 WL 5989918, at *21 (quoting EON Corp. IP Holdings LLC v. FLO TV Inc., 802 F. Supp. 2d 527, 533 (D. Del. 2011)). With respect to method claims, Plaintiff must allege that Defendant "induced the performance of the steps of the method claimed in the patent . . . ." Akamai, 692 F.3d at 1318.

1. The '650 Patent

The PAC alleges that Defendant "indirectly infringed claim 1 and other claims of the '650 Patent" because it induced others to infringe by providing instructions, directions, and promotional materials. (PAC ¶ 12.) More specifically, Plaintiff alleges that Defendant "actively induces customers and potential customers to apply its Marking Products, comprising DNA and a fluorescent material detectable with UV light in a solvent medium containing a volatile solvent, as a colorless, odorless film to fabrics, plastics, metals, narcotics and product packaging." (PAC ¶ 12.)

Plaintiff cites to two examples from Defendant's website. However, the Court agrees with Defendant that "[o]ne will search these materials in vain . . . for any instruction, direction, or promotion of activity that satisfies the elements of the claims of the patents-in-suit" (Def.'s Opp. Br. at 8), at least insofar as the '650 Patent is concerned. Claim one of the '650 Patent includes the step of "directly transferring said composition from said object to a person tampering therewith." (Compl. Ex. 1, Claim 1.) The websites, though, promote Defendant's products and encourage potential customers to mark items with a "stealth DNA marker" or mount a DNAnet system near an exit door. See http://www.adnas.com/DNA-marking-for-police-and-security-agencies (last visited Sept. 17, 2013); http://www.adnas.com/DNAnet_forensic_tagging_systems (last visited Sept. 17, 2013). Nothing in these materials suggests that Defendant induces all steps of the method, including transfer to a person tampering with an item.

In fact, the PAC glosses over this step, alleging that "[c]ustomers are instructed and directed to apply the Marking Products to various objects with the express purpose and expectation that the fluorescent marking will be transferred to any person tampering with such marked object." (PAC ¶ 12.) This assertion reveals that the alleged inducement pertains to

applying the Marked Products, but not to other steps of the method claims.

Certainly Plaintiff is correct in its contention that advertising materials, and particularly instructions, can sufficiently allege specific intent to induce infringement. See Wyeth v. Sandoz, Inc., 703 F. Supp. 2d 508, 519 (E.D.N.C. 2010) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . . ." (internal quotation marks and citation omitted)). Furthermore, as the Federal Circuit held in Akamai, induced infringement does not require that all of the steps of infringement be committed by a single entity. See Akamai Tech., Inc., 692 F.3d at 1306. However, Akamai

> address[ed] the question [of] whether a
> defendant may be held liable for induced
> infringement if the defendant has performed
> some of the steps of a claimed method and
> has induced other parties to commit the
> remaining steps . . ., or if the defendant
> has induced other parties to collectively
> perform all the steps of the claimed method,
> but no single party has performed all of the
> steps itself . . . .

Id.

Here, Plaintiff's allegations assert only that Defendant induces customers and potential customers to apply its

Marking Products to particular merchandise or materials. The PAC does not allege that Defendant induces other parties to collectively perform all of the steps of the claimed method. See Bascom Research LLC v. Facebook, Inc., No. 12-CV-6293, 2013 WL 968210, at *6 (N.D. Cal. Mar. 12, 2013) (dismissing induced infringement claim where "the complaints do not actually allege that defendants induce[d] performance of all of the steps, in some combination or other").

Moreover, Plaintiff must allege that the Defendant acted with the specific intent to induce a third party or third parties to infringe the '650 Patent. See Advanced Optical Tracking, LLC v. Koninklijke Philips N.V., No. 12-CV-1292, 2013 WL 4786463, at *4 (D. Del. Sept. 9, 2013); Air Vent, Inc. v. Owens Corning Corp., No. 10-CV-1699, 2011 WL 2601043, at *4 (W.D. Pa. June 30, 2011). The PAC fails in this regard. Defendant's promotional materials were not "directed to encouraging another's infringement," Symantec Corp. v. Comp. Assocs., Int'l, Inc., 522 F.3d 1279, 1292 (Fed. Cir. 2008), because the acts that Defendant encouraged were not infringing.

Accordingly, Plaintiff's motion to amend in this respect is DENIED.

2. The '152 Patent

The PAC also alleges that Defendant "indirectly infringed claim 10 and other claims of the '152 Patent" by

providing instructions, directions and promotional materials.

(PAC ¶ 20.) Again, Plaintiff cites to particular websites.[6]

Claim ten of the '152 Patent states:

A method for identifying a surface, comprising the steps of:

selecting a plurality of separately identifiable trace materials;

establishing a database in which a unique combination of at least five said trace materials is assigned to a unique source;

formulating a composition containing said unique combination together with an indicator material and a solvent system therefor, said solvent system comprising a solvent which is volatile under conditions of application;

applying said composition to a surface, and permitting said solvent to evaporate, said composition after evaporating being colorless, odorless and having no feel thereto;

detecting said composition on the basis of said indicator material and identifying the plurality of trace materials therein; and determining the unique source from said database.

(Compl. Ex. 2, Claim 10.)

Unlike the '650 Patent, the Court finds that the PAC adequately pleads induced infringement of the '152 Patent. As noted previously, Defendant had knowledge of the '152 Patent at

---

[6] More specifically, Plaintiff cites to
http://www.adnas.com/texiles-and-apparel-applications and
http://www.youtube.com/watch?v=RDiuxDBZWlg&feature=channel&list=
UL. (PAC ¶ 20.)

least as of June 2012 when Plaintiff served the Massachusetts complaint. See supra pp. 19-20. As to active inducement with specific intent, the Court turns to the websites to which Plaintiff cites in the PAC. For example, Defendant's website includes a page entitled "Textile and Apparel," which advertises that "Defendant works with you and your business to develop and implement an authentication system that best suits your needs." See http://www.adnas.com/textile-and-apparel-applications. Further, Video 2 describes the process of how the smartDNA system works, including marking a suspect, screening the suspect with a UV light, and taking a sample for detection. See http://youtube.com/watch?v=RDiuxDBZWlg&feature=channel&list=UL. It also contains a demonstration with narrative discussing a mist, which appears to dry clear, that contains a DNA marker specifically assigned to a particular location on file in a vault and which can be traced. See id.

Such advertisements and statements at least plausibly suggest inducement of the '152 Patent. See Automated Transactions, LLC, 2010 WL 5819060, at *6 (allegations that the plaintiff provides customers "with detailed explanations, instructions and information as to arrangements, applications and uses of [a product] that promote and demonstrate how to use [that product] in an infringing manner . . . supports a reasonable inference that it induced its customers to use the

alleging infringing device" (internal quotation marks and citation omitted)). Therefore Plaintiff's motion to amend in this regard is GRANTED.

C. <u>Contributory Infringement</u>

Finally, Plaintiff also seeks to allege claims for contributory infringement of both patents. Defendant maintains that Plaintiff "merely parrots the legal requirements" for such a claim. (Def.'s Opp. Br. at 9.) The Court agrees.

Contributory infringement requires "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." <u>Fujitsu Ltd. v. Netgear Inc.</u>, 620 F.3d 1321, 1326 (Fed. Cir. 2010). "With regard to the third prong, a substantial non-infringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" <u>Pecorino</u>, 2012 WL 5989918, at *23 (quoting <u>Vita-Mix Corp. v. Basic Holdings, Inc.</u>, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009)).

Plaintiff raises similar allegations for both patents-in-suit. For example, for the '650 Patent, Plaintiff alleges that

> [Defendant] has contributed to the infringement of the '650 Patent, literally or under the Doctrine of Equivalents, by the

27

> sale of the Marking Products to customers in
> the United States. [Defendant] has made
> such sales with knowledge of [Plaintiff's]
> '650 Patent and with knowledge that the
> Marking Products are specially made and/or
> adapted for use in the infringement of
> [Plaintiff's] '650 Patent, and are not
> staple articles or commodities of commerce
> suitable for substantial noninfringing uses.

(PAC ¶ 14.)

Other than reciting that there are no substantial noninfringing uses, however, Plaintiff offers virtually no factual support. Plaintiff merely identifies its products and Defendant's "Marking Products," and then repeats the elements of a contributory infringement claim. This is insufficient. See BIAX Corp. v. Motorola Solutions, Inc., No. 10-CV-3013, 2012 WL 502727, at *3 (D. Colo. Feb. 15, 2012) (dismissing plaintiff's contributory infringement claim where the complaint "merely recites statutory language"); Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, Inc., No. 10-CV-0677, 2011 WL 3490471, at *4 (S.D. Cal. Aug. 10, 2011) (dismissing a contributory infringement claim because the plaintiff's "allegation does nothing more than mirror statutory language").

Accordingly, Plaintiff's motion to amend is DENIED insofar as its contributory infringement claims are concerned.

IV. Prejudice

Finally, the Court finds that amendment, in accordance with the rulings above, would not prejudice Defendant.

28

As Defendant correctly notes, "'[l]eave to amend is routinely denied where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery.'" (Def.'s Opp. Br. at 13 (quoting <u>Chiaro v. Cnty. of Nassau</u>, 488 F. App'x 518, 519 (2d Cir. 2012)). However, and although Plaintiff moved to amend approximately seven months after Defendant filed its motion to dismiss, Defendant would not be prejudiced by the amendment. <u>See</u> <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993) ("Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." (internal quotation marks and citation omitted)).

Here, Plaintiff moved to amend its Complaint after the parties had initiated discovery. Plaintiff's PAC does not add any new claims or necessarily require any new discovery, but rather fleshes out its previous claims and includes factual allegations not in the original Complaint.

Accordingly, Plaintiff's motion to amend is GRANTED insofar as the PAC conforms to the rulings above.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's partial motion to dismiss is DENIED AS MOOT. Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's motion is GRANTED insofar as the PAC alleges claims for direct infringement of the patents-in-suit, knowledge of the patents-in-suit as of June 2012, and induced infringement of the '152 Patent. Plaintiff's motion to amend is otherwise DENIED.

The Clerk of the Court is directed to docket the PAC (Docket Entry 61, Ex. A) as the Amended Complaint. However, the Amended Complaint remains operative only insofar as it is consistent with the Court's rulings explained above.

SO ORDERED.

/s/JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    September 27, 2013
          Central Islip, NY